United States District Court
Southern District of Texas
**ENTERED**
February 25, 2026
Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| **GLENDY W. TOLBERT, III,** | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. 4:24-CV-03209 |
| | § | |
| **DOLLAR TREE DISTRIBUTION, INC.,** | § | |
| | § | |
| Defendant. | § | |

## MEMORANDUM AND ORDER

Before the Court is Defendant Dollar Tree Distribution, Inc.'s Motion for Complete Summary Judgment. ECF No. 29. For the reasons that follow, the Court now **GRANTS** the Motion.

### I.  BACKGROUND

As far as the Court can discern, the relevant facts are as follows. Plaintiff Glendy Tolbert III began working for Dollar Tree Distribution, Inc. ("Dollar Tree") in March, 2021 as an equipment operator. ECF No. 29, Ex. E at 30:17-19, 59:9-18, 143:19-21 ("Deposition Transcript"). On July 1 of that year, Plaintiff requested and received an unpaid leave of absence due to injuries sustained in an unrelated motor vehicle accident.[1] *Id*. at 143:22-25, 147:11-148:7; ECF No. 30, Ex. F (Accommodations Request). Plaintiff was scheduled to return from work on August 18, 2021, but was absent on August 18 and 19 due to a COVID-19 infection. Deposition Transcript.

---

[1] Plaintiff does not appear to challenge the accommodation he received in response to this request.

at 149:10-12, 152:7-9; ECF No. 29, Ex. D-3 ("Attendance Record"). The parties dispute whether these absences were excused under Dollar Tree's attendance policy.

On or about October 20, 2021, Plaintiff emailed Human Resources personnel (HR) about returning to work. ECF No. 1-2 at 11; Deposition Transcript at 137:18-138:4. HR informed him that he needed to submit confirmation that he was no longer infected with COVID in order to return to work and clearing him to return to work after his motor vehicle accident-related injuries. *Id*. Plaintiff submitted the last of the required medical forms on November 4, 2021 (a Thursday). ECF No. 30, Ex. G (Return to Work Form). He returned to work on November 8 (a Monday). Deposition Transcript at 154:8-15, 163:12-14.

During the October 2021 email exchange between Plaintiff and HR, HR Manager Jamario Reed and Life Management Specialist Wendy Pestik referred to Plaintiff using "she/her" pronouns rather than male pronouns. Plaintiff informed HR that he was male, and they apologized and referred to him by male pronouns from then on. ECF No. 29, Ex. D at ¶ 3; Deposition Transcript at 116:11-12.

From Plaintiff's return to work on November 8, 2021 until January 24, 2022, Plaintiff was tardy or left early 6 times and was absent 4 times. ECF No. 29, Ex. D-3. Plaintiff has submitted no contrary evidence suggesting that the timesheet is not an accurate reflection of his attendance (except with regard to August 18 & 19, 2021). On January 21, 2022, Plaintiff requested February 3 off to attend a hearing before the Equal Employment Opportunity Commission (EEOC) for a different company. ECF No. 29, Ex. A (EEOC Charge). According to Plaintiff's EEOC charge, he was instructed to inquire with Human Resources, who told him that he did not have any remaining PTO. *Id*. On January 27, Plaintiff alleges that he was questioned by his supervisor regarding his

August 18 and 19, 2021 absences, which he informed her were due to COVID and paid. *Id*. Plaintiff was then sent home pending an investigation of having incurred more than the permitted seven attendance points. *Id*.

On January 30, 2022, Defendant terminated Plaintiff, citing repeated violations of Defendant's attendance policy. ECF No. 29, Ex. D-1 (Declaration of Kelly Fox) at ¶ 4. This decision was made by Department Manager Tammy Martinez. *Id*.

On October 26, 2022, Plaintiff filed a charge with the EEOC alleging disability discrimination and retaliation under the ADA as well as retaliation under Title VII. ECF No. 29, Ex. 1. He was issued a Right to Sue letter and filed this lawsuit on August 23, 2024. Plaintiff alleges that Defendant discriminated against him on account of his gender in violation of Title VII of the Civil Rights Act, discriminated against him on the basis of disability in violation of the Americans with Disability Act (ADA), retaliated against him under the ADA, and retaliated against him for requesting time off in order to attend an EEOC mediation for another employer, in violation of Title VII.[2] *Id*.

## II.     LEGAL STANDARD

Summary judgment is appropriate where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The movant bears the initial burden of "demonstrat[ing] the absence of a genuine issue of material fact."

---

[2] Defendant also moves for summary judgment on a purported claim of race discrimination under Title VII. *See* ECF No. 29 at 15. But Plaintiff's complaint did not assert a claim of race discrimination, and Plaintiff's response clarifies that he does not intent to assert a race discrimination claim. *See* ECF No. 30 at 2. The Court therefore declines to address Plaintiff's purported race discrimination claim.

*Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The burden shifts to the nonmoving party to respond to the motion by setting forth particular facts to establish that there is a genuine issue for trial. *See Mississippi River Basin All. v. Westphal*, 230 F.3d 170, 174 (5th Cir. 2000). "After the non-movant has been given the opportunity to raise a genuine factual issue, if no reasonable juror could find for the non-movant, summary judgment will be granted." *Id*. Here, the Court finds that Defendant is entitled to summary judgment as a matter of law on all of Plaintiff's claims.

### III. ANALYSIS

#### A. Gender Discrimination

Plaintiff's gender discrimination claim fails because Plaintiff failed to exhaust his administrative remedies as to that claim. Title VII requires plaintiffs to exhaust their administrative remedies by filing an EEOC charge prior to bringing suit. *See* 42 U.S.C. § 2000e-5(f)(1). "In a[n] [employment] discrimination case, the district court does not have subject matter jurisdiction until the 'EEOC has first had the opportunity to obtain voluntary compliance.' *Kebiro v. Walmart*, 193 F. App'x 365, 367 (5th Cir. 2006) (quoting *Pacheco v. Mineta*, 448 F.3d 783, 789 (5th Cir.2006). "The relevant question is whether the claims presented in the district court could reasonably be expected to grow out of the charge of discrimination" presented to the EEOC. *Id*. Here, Plaintiff did not make a claim of gender discrimination or even mention the factual basis for that claim in his EEOC charge. *See* ECF No. 29, Ex. A (EEOC Charge). Plaintiff's gender discrimination claim must therefore be dismissed for failure to exhaust administrative remedies.

#### B. Disability Discrimination

To prevail on a claim of discrimination under the ADA, "[a] plaintiff must prove that 1) he has a 'disability'; 2) he is 'qualified' for the job; and 3) an adverse employment decision was made

solely because of his disability." *Atkins v. Salazar*, 677 F.3d 667, 675 (5th Cir. 2011) (internal citations omitted).

At the outset, it is difficult to understand exactly what disability Plaintiff claims as the basis for his ADA claim. At times, Plaintiff references the injuries he sustained from a non-work-related car accident, at others he alleges that he was terminated on the basis of his COVID-19 infection in August 2021. The Court will address both claims.

### i.    Plaintiff's accident-related injuries

The Court assumes for the purposes of this motion that Plaintiff's car accident-related injuries qualify as a disability under the ADA and that Plaintiff was qualified for his job at Dollar Tree. Plaintiff has pointed to three adverse employment actions that he allegedly suffered on the basis of his injuries: (1) he was not registered for short term disability coverage when hired, (2) his return to work from COVID sick leave was delayed and (3) he was terminated. However, Plaintiff fails to address any of these claims in his response to Defendant's Motion, focusing instead on the emails from members of HR in which Plaintiff was misgendered, his August 2021 COVID-19 infection, and his Title VII retaliation claim. *See generally* ECF No. 30. "A plaintiff abandons claims when [he] fails to address the claims or oppose a motion challenging those claims." *Terry Black's Barbecue, L.L.C. v. State Auto. Mut. Ins. Co.*, 22 F.4th 450, 459 (5th Cir. 2022).

This claim also fails on the merits because Plaintiff fails to present any evidence of a causal connection between his injurues and the alleged adverse employment actions. *See Atkins*, 677 F.3d at 675 (holding that a plaintiff must prove that "an adverse employment decision was made solely

because of his disability"). Plaintiff states that he was not registered for optional short-term disability benefits because his supervisor failed to submit his onboarding paperwork (as well as that of other new hires) when he was hired. *See* Defendant's Exhibit E at 33. But this oversight occurred when Plaintiff was hired in March, 2021, which was before Plaintiff's car accident.

Plaintiff's return to work claim fails because Plaintiff fails to show that he was treated differently from other non-disabled employees. According to Plaintiff's own evidence, he did not submit the required medical paperwork indicating that he was cleared to return to work until November 4, 2021. *See* ECF No. 30, Ex. G (Return to Work Form). It is undisputed that Plaintiff returned to work on November 8, the following Monday. Plaintiff has submitted no evidence that the delay in his return to work was attributable to anything but his own failure to submit the required paperwork.

Finally, Plaintiff cannot prove that he was terminated because of his injuries. At the time he was terminated, Plaintiff had been cleared to return from work after his car accident and had in fact returned. Indeed, Plaintiff's primary allegation is that he was terminated because of his request for time off to litigate an EEOC charge against a former employer—not that he was fired on account of a disability.

    ii.    **Plaintiff's COVID-19 Infection**

Plaintiff has also alleged that he was "retaliated and discriminated against due to [his] COVID 19 diagnosis/disability." ECF No. 1-2 at 4. The Court understands Plaintiff as alleging that Defendant mischaracterized his August 18 and 19, 2021 absences as "no call no show" unexcused absences when they were in fact paid leave related to Plaintiff's COVID-19 infection

and used this as a basis for his termination in January of 2022. But temporary infection with COVID-19 does not qualify as a "disability" under the ADA. The ADA defines a "disability as "a physical or mental impairment that substantially limits one or more major life activities of such individual," "a record of such an impairment;" or "being regarded as having such an impairment." 42 U.S.C. § 12102(1). "[A]n impairment need not be 'permanent or long-term' to qualify as a disability." *Mueck v. La Grange Acquisitions, L.P.*, 75 F.4th 469, 481 (5th Cir. 2023), *as revised* (Aug. 4, 2023). This does not mean, however, that a typical case of COVID-19 or influenza which causes an employee to miss work is considered a disability under the ADA. Here, Plaintiff has not identified or produced any evidence that his COVID-19 infection "substantially limit[ed] one or more major life activities." 42 U.S.C. § 12102(1). Thus, Plaintiff's cannot prove that he has a disability within the meaning of the ADA.

Additionally, based on his deposition and response to the Motion for Summary Judgment, Plaintiff does not appear to allege that he was actually fired because of his COVID-19 infection in August 2021. Rather, the Court understands Plaintiff as claiming that, months after the fact, Defendant used his COVID-19 absences as a pretext for retaliation against him in violation of Title VII. *See* ECF No. 1-2 at 3-4 (EEOC charge) (Stating that "Mr. Reed had only spoke with me via email and assumed that I was a woman referring to me as Mrs. Tolbert until I referenced myself as a man. This disagreement started the retaliation ultimately leading up to me being terminated months after the so called No call No shows on August 18th and 19th of 2021."). The Court thus concludes that Plaintiff's Title VII retaliation claim is the more appropriate vehicle through which to address these allegations.

## C. Retaliation under the ADA

To show unlawful retaliation under the ADA, "a plaintiff must establish a *prima facie* case of (1) engagement in an activity protected by the ADA, (2) an adverse employment action, and (3) a causal connection between the protected act and the adverse action." *Seaman v. CSPH, Inc.*, 179 F.3d 297, 301 (5th Cir. 1999). Here, Plaintiff most plausibly alleges that he was terminated after requesting time off to attend an EEOC mediation with a former employer. He does not present evidence that he was terminated or otherwise retaliated against for requesting accommodations under the ADA for his accident-related injury or for taking any other action protected by the ADA.

To the extent Plaintiff alleges that he was terminated because he took time off on August 18 and 19, 2021 to recover from COVID-19, the ADA is not the proper vehicle for this claim. As previously discussed, Plaintiff has not presented any evidence to show that his COVID-19 infection qualified as a disability under the ADA (or that Defendant regarded him as disabled on this account). Thus, he cannot show a protected action under the ADA related to his COVID-19 diagnosis.

If Defendant in fact terminated Plaintiff because he took time off to recover from COVID-19 in August 2021, it is possible this would have violated Defendant's sick leave policy or otherwise been actionable under a different statute. But Plaintiff has not raised or briefed such a claim nor presented sufficient information about Defendant's policies and their intersection with the applicable legal regime for the Court to address such a claim, had it been raised. Additionally, as Defendant notes, even excluding Plaintiff's August 18 and 19, 2021 absences, Plaintiff "far surpassed" the seven attendance "points" required for termination in December 2021 and January 2022." ECF No. 29 at 9, citing Ex. D-3 (Attendance Record). Though Plaintiff generally disputes this allegation, he has not identified inaccuracies in the attendance record put forward by

Defendant, other than the August 2021 absences. Plaintiff was terminated because of repeated violations of Defendant's attendance policy. Defendant's Exhibit D-1 at ¶ 4. Thus, even assuming that Plaintiff could establish a *prima facie* case of ADA discrimination or retaliation based on his COVID-19 infection, he had failed to provide sufficient evidence from which a reasonable jury could conclude that Defendant's nondiscriminatory reason for his termination was pretextual.

### D. Title VII Retaliation Claim

Plaintiff's most plausible claim is that he was retaliated against for requesting time to mediate an EEOC charge against a different employer, in violation of Title VII. However, it too must fail because Plaintiff has not presented the requisite evidence to prove a *prima facie* case of retaliation under Fifth Circuit precedent.

"To establish a prima facie case of retaliation, [Plaintiff] must show that: 1) [they] engaged in a protected activity; 2) [they] suffered an adverse employment action; and 3) there is a causal connection between the two." *Owens v. Circassia Pharms., Inc.*, 33 F.4th 814, 835 (5th Cir. 2022). While "the mere fact that some adverse action is taken after an employee engages in some protected activity will not always be enough for a *prima facie* case, close timing between the protected activity and adverse action can establish the causal link required to assert a *prima facie* case." *Id*. (internal citations and quotation marks omitted).

In the Fifth Circuit, plaintiff alleging retaliation must provide direct evidence that the individual who made the decision to terminate (or otherwise retaliate against) the plaintiff had actual knowledge of the protected activity. *See, e.g., Robinson v. Jackson State Univ.*, 714 F. App'x 354, 360 (5th Cir. 2017) (noting that unlike some other circuits, the Fifth Circuit has "consistently

required proof of 'actual' decisionmaker knowledge" as opposed to constructive or implied knowledge"); *Lee v. Kansas City* S. Ry. Co., 574 F.3d 253, 258 (5th Cir. 2009) (finding that the decisionmaker's "statement about managers' generalized knowledge of [EEOC] complaints and the fact that [the decisionmaker] had discussed [plaintiff's] potential firing with [someone who knew about plaintiff's EEOC charge]" was insufficient to prove actual knowledge).

Here, the basis for Plaintiff's retaliation claim is the fact that he was terminated merely nine days after requesting time off to attend an EEOC hearing for a former employer. *See* ECF No. 1-2 at 1. Defendant does not dispute that Plaintiff engaged in a protected activity or suffered an adverse employment action, but alleges that Plaintiff cannot prove causation.

The Court agrees with Plaintiff that the close proximity between Plaintiff's protected request and his termination are probative of a causal link between the two. While "the mere fact that some adverse action is taken after an employee engages in some protected activity will not always be enough for a prima facie case, close timing between the protected activity and adverse action can establish the causal link required to assert a *prima facie* case." *Owens v. Circassia Pharms., Inc.*, 33 F.4th 814, 835 (5th Cir. 2022) (internal citations and quotation marks omitted); *see also Lyons v. Katy Indep. Sch. Dist.*, 964 F.3d 298, 305 (5th Cir. 2020) (noting that the Fifth Circuit "ha[s] ruled, for example, that a six-and-a-half-week timeframe [between a protected action and an adverse employment action] is sufficiently close" to establish causation."). However as stated above, the Fifth Circuit also requires that Title VII retaliation plaintiffs "'actual' decisionmaker knowledge" [of the protected activity] as opposed to constructive or implied knowledge." *Lee*, 574 F.3d at 258. Here, the person who made the decision to terminate Plaintiff was Department Manager Tammy Martinez. ECF No. 29, Ex. D-1 at ¶ 4. At his deposition,

Plaintiff testified that the only person he informed about the EEOC mediation was a clerk at Dollar Tree's HR desk. *See* Deposition Transcript at 185:17–23. He testified that he did not know whether this clerk told anyone else and never heard the clerk communicate this information to anyone (though he suspected that the request made its way up the chain). Under Fifth Circuit precedent, this is not sufficient to show "actual" knowledge of Plaintiff's protected request on the part of Ms. Martinez.

Because Plaintiff has not presented any evidence to suggest that Ms. Martinez had actual knowledge of his protected activity, he cannot establish a *prima facie* case of retaliation under Title VII. The Court therefore need not address Defendant's purported non-discriminatory reason for firing Plaintiff (namely, excessive violations of Defendant's attendance policy) or Plaintiff's contention that Defendant's stated reasons were pretextual (namely, that his August 18 and 19, 2021 absences were in fact paid sick leave). Defendant is thus entitled to summary judgment on Plaintiff's claim of retaliation in violation of Title VII.

## IV. CONCLUSION

For the reasons stated above, the Court **GRANTS** Defendant's Motion for Summary Judgment (ECF No. 29) Plaintiff's claims are **DISMISSED** with prejudice.

**IT IS SO ORDERED.**

Signed at Houston, Texas on February 25, 2026.

_____
Keith P. Ellison
United States District Judge